# In the United States Court of Federal Claims

Nos. 14-21L/16-405L (Consolidated)
(Filed: October 18, 2019)

| | |
|---|---|
| ELLEN AND MARK S. BALAGNA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br><br>        Defendant.<br><br>ROBERT AND SUSAN BATTERTON, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br><br>        Defendant. | Keywords: National Trails System Act; Trails Act; Rails-to-Trails; 16 U.S.C. § 1247(d); Takings Clause; Duration of the Taking; Notice of Interim Trail Use (NITU). |

## OPINION AND ORDER

*Meghan S. Largent*, Lewis Rice LLC, St. Louis, Missouri, with whom was *Lindsay S.C. Brinton*, for Plaintiffs Robert and Susan Batterton, et al.

*James H. Hulme*, Arent Fox LLP, Washington, D.C., with whom were *Abram J. Pafford* and *Laurel LaMontagne*, for Plaintiffs Ellen and Mark Balagna, et al.

*Sarah Izfar*, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., with whom was *Lawrence Vandyke*, Deputy Assistant Attorney General, for Defendant.

**KAPLAN, Judge.**

Currently before the Court in this rails-to-trails case are the parties' cross-motions for partial summary judgment regarding the duration of the taking. See Landowners' Mot. for Partial Summ. J. Regarding the Duration of the Taking ("Pls. Mot."), ECF No. 194; United States' Partial Mot. for Summ. J. Regarding the Duration of Alleged Taking ("Def. Mot."), ECF No. 195.[1] For the reasons set forth below, the government's motion for partial summary judgment is **GRANTED** and the Plaintiffs' motion is **DENIED.**

## BACKGROUND

The Court detailed the facts of these consolidated cases in two earlier opinions on motions for partial summary judgment. Balagna v. United States ("Balagna I"), 135 Fed. Cl. 16 (2017); Balagna v. United States ("Balagna II"), 138 Fed. Cl. 398 (2018). To summarize, Plaintiffs own land abutting a 14.5-mile railroad right-of-way in Fulton County, Illinois. Balagna I, 135 Fed. Cl. at 18–19. On May 24, 2013 the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") covering the right-of-way. Id. at 20. After being extended multiple times, the NITU expired on November 22, 2018 without a trail-use agreement having been reached. See Def. Mot. at 3.

On August 6, 2018, while the final extension of the NITU was in effect, this Court issued an opinion on the parties' second set of cross-motions for partial summary judgment. See Balagna II, 138 Fed. Cl. 398. Those cross-motions concerned, among

---

[1] All citations are to the docket for the lead case, No. 14–21L.

other things, whether the takings at issue, then having lasted over five years, should be treated as temporary or permanent ones. Agreeing with the government, the Court concluded that unless and until a trail use agreement was reached, the takings should be treated as temporary and that the measure of compensation should be based on a methodology appropriate to temporary takings. Id. at 404–05.

Nonetheless, the Court denied as unfair to the Plaintiffs the government's request for a stay of the damages determination pending the completion of the negotiations between the putative trail sponsor and the Railroad. Balagna II, 138 Fed. Cl. at 406–407. The Court reasoned that the uncertainty about the length of the takings need not preclude it from fashioning a damages remedy. Id. at 406. It noted that in Ladd v. United States, 108 Fed. Cl. 609, 616 (2012), aff'd in part and rev'd in part, 713 F.3d 648 (Fed. Cir. 2013), for example, the court had suggested that damages could be calculated by having an appraiser: 1) determine the total value of the temporary taking beginning with the date that the NITU was issued and ending on the date of any order by the Court, and 2) develop "a daily factor for determining value at a later date as needed." Balagna II at 406 (quoting Ladd, 108 Fed. Cl. at 616). Quoting Ladd, the Court suggested that it could retain jurisdiction to recalculate the value of the temporary taking using the later date "[i]f or when the Railroad files a Notice of Consummation of Abandonment." Id.

The parties have been engaged in settlement discussions since the Court issued its decision on August 6, 2018. In the meantime, as noted, the NITU expired on November 22, 2018. Def. Mot. at 3. On February 4, 2019, the Railroad asked the STB to extend the sixty-day period for consummating the abandonment of the rail line until January 21,

2020. Id. at 4.[2] It requested the extension so that it might resolve a condition that the STB had earlier placed on the consummation of the abandonment under § 106 of the National Historic Preservation Act, 54 U.S.C. § 306108 ("NHPA"). Id. at 3–4.[3] The STB granted the Railroad's request on April 16, 2019. Id. at 4.

On August 9, 2019, the parties advised the Court that they had reached another impasse in their settlement discussions. Joint Status Report, ECF No. 192. Their disagreement concerns whether any takings effected upon the NITU's issuance ended upon its expiration in November 2018 (as the government argues), or whether such takings will end only when the Railroad consummates its abandonment of its right-of-way (as Plaintiffs contend). The parties requested an opportunity to file another set of cross-motions for partial summary judgment addressed to that issue. The Court granted the parties' request, ECF No. 193, and the cross-motions are currently before the Court.

For the reasons set forth below, the Court concludes that the takings ended with the expiration of the NITU on November 22, 2018. The government's motion for partial

---

[2] Under 49 C.F.R. § 1152.29(e)(2), a railroad must file a notice of consummation of abandonment within one year from the date of an STB decision permitting such abandonment or sixty days from the expiration or removal of the last legal or regulatory barrier to consummation (in this case, the expiration of the NITU). The Railroad's notice was therefore originally due on January 21, 2019. The STB, however, was not accepting filings at that time because the government was in a partial shutdown between December 22, 2018 and January 25, 2019. Once the shutdown ended, the STB announced that it would accept filings due during the shutdown period so long as they were submitted by February 4, 2019. Def. Mot. Ex. 1, at 2.

[3] This condition related to a stone arch bridge at milepost 52.86. Id.

summary judgment regarding the duration of the taking is therefore **GRANTED** and the
Plaintiffs' motion is **DENIED**.

## DISCUSSION

It is well established that the operation of the Trails Act[4] leads to a compensable
taking where a plaintiff possesses a "state law reversionary interest[]" in land subject to a
railroad's right-of-way that is "effectively eliminated in connection with [the] conversion
of [the] railroad right-of-way to trail use." Caldwell v. United States, 391 F.3d 1226,
1228 (Fed. Cir. 2004) (citing Preseault v. United States, 100 F.3d 1525, 1543 (Fed. Cir.
1996) (en banc)). That taking occurs "when the railroad and trail operator communicate
to the STB their intention to negotiate a trail use agreement and the agency issues an
NITU," for it is that action which "operates to preclude abandonment [of the railroad
right-of-way] under section 8(d)." Id. at 1233. Put another way, the issuance of the NITU
blocks reversionary property interests and "prevents the landowner[] from
possess[ing] . . . their property unencumbered by the easement." Ladd v. United States,
630 F.3d 1015, 1023 (Fed. Cir. 2010) (footnote omitted).

Once the NITU expires, however, there is no government action that prevents a
railroad from taking the steps required to consummate its abandonment of the right-of-
way by filing the necessary notice. See Caldwell, 391 F.3d at 1233–34 (observing that
"[t]he issuance of the NITU is the only government action in the railbanking process that
operates to prevent abandonment of the corridor and to preclude the vesting of state law

---

[4] § 208 of the National Trails System Act Amendments of 1983, Pub. L. No. 98–11, §
208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)) (amending § 8 of the National
Trails System Act).

reversionary interests in the right-of-way."). Therefore, the taking effected by the NITU's

issuance ends upon the NITU's expiration. See Caquelin v. United States, 140 Fed. Cl.

564, 579 (2018), appeal docketed, No. 19-1385 (Fed. Cir. Jan. 9, 2019) (observing that

"the duration and time of the taking is undisputed and uncontroversial" and that "[t]he

taking began on the date the STB issued the NITU and blocked Mrs. Caquelin's

reversionary interest in the property . . . and ended when the NITU expired"). This is so

notwithstanding that—until the Railroad takes action to consummate the abandonment—

the STB continues to have jurisdiction over the right-of-way, just as it did before the

NITU was issued. See Arnold v. United States, 137 Fed. Cl. 524, 556 (2018) (finding

STB's decision to grant the railroad extensions of time to consummate abandonment "did

not prevent abandonment of the railroad corridor or preclude the vesting of the property

owner's reversionary rights under state law"; instead, the railroad's "decision not to

consummate abandonment and to request four extensions of time for the period in which

[the railroad] has been given to consummate abandonment prevented plaintiffs from

receiving their reversionary rights"); Farmers Coop. Co. v. United States, 100 Fed. Cl.

579, 583 (2011) (explaining that "[i]n a rails-to-trails takings case, the issue is not

whether STB jurisdiction continues or whether the railroad retains a property interest

upon the expiration of a NITU, but whether the Government has taken any action that

forestalls the vesting of the underlying landowners' property rights").

      Plaintiffs argue that the expiration of the NITU that effected the taking does not

necessarily end the taking because it is conceivable that another NITU will be issued

before the Railroad consummates its abandonment of the right-of-way. Pl. Mot. at 6

(observing that "the fact that the NITU has expired in this case is of no import because

NITUs are routinely resurrected by the STB in order to implement trail use"). They observe that in <u>Barclay v. United States</u>, the court of appeals held that where the STB issued a new NITU several weeks after a prior NITU expired, it did not effect a new taking but instead "merely extended the original NITU" albeit with a new potential trail sponsor listed. 443 F.3d 1368, 1376 (Fed. Cir. 2006).

But there is no evidence before the Court showing that another potential trail sponsor is waiting in the wings or that a resurrection of the now long-expired NITU is contemplated. To the contrary, the evidence reveals that the Railroad is intent upon abandoning the line once it resolves the NHPA condition described above. Def. Mot. Ex. 5 (January 11, 2019 letter from the Railroad to Plaintiffs' Counsel stating that it had "not received inquiries from any other individual or group" interested in sponsoring the trail and that the Railroad "intends to move toward consummation of the abandonment"). Plaintiffs' citation of <u>Barclay</u> is therefore unavailing. <u>See</u> Landowners' Reply in Supp. of Their Mot. for Partial Summ. J. Regarding the Duration of the Taking at 2–5, ECF No. 198.

Finally, Plaintiffs contend that "the methodology for determining damages proposed in the Court's published opinion requires the Court to retain jurisdiction." Pl. Mot. at 6. This contention lacks merit. The Court cited the methodology used in <u>Ladd</u>, 108 Fed. Cl. 609, as an example of a way that damages could be awarded notwithstanding that the length of the temporary taking remained uncertain. It did so in response to the government's argument that the valuation portion of the case would have to be put off for an indefinite period of time while the Railroad and the trail sponsor continued their negotiations (which were then in their sixth year). <u>See</u> <u>Balagna II</u>, 138

Fed. Cl. at 406. The Court did not intend to make any pronouncements about the duration of any taking, much less suggest that such takings would continue after the negotiations ended and the NITU expired, and until the Railroad consummated its abandonment of the line. Further, the NITU expired a few months after the Court issued its decision, thereby ending the temporary taking and obviating any reason for it to retain jurisdiction as contemplated in Ladd, 108 Fed. Cl. 609.

## CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment is **GRANTED** and the Plaintiffs' cross-motion is **DENIED**. The parties shall file a joint status report by **December 2, 2019**, apprising the Court of the status of their settlement discussions and proposing further proceedings in these consolidated cases.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan

ELAINE D. KAPLAN

Judge